## Richmond.

RICHMOND AND DANVILLE R. R. Co. v. PANNILL.

January 26th, 1893.

EMPLOYEES—*Disregard of rules—Case at bar.*—In action for personal injury, the plaintiff, a brakeman, knowing the rules of the defendant railroad company forbidding coupling or uncoupling cars except with a stick, and going in between cars with engine attached, went between them to uncouple cars with a stick, which was inefficient for that purpose, because coupling-pin was tight and short. Another brakeman, without plaintiff's knowledge, signalled engineer to reverse engine enough to relieve pressure on pin. Plaintiff's hand, being between bumpers coming together, was caught and mashed. HELD:

> He cannot recover, because his injury was the proximate result of his own disregard of the rules.

Error to judgment of circuit court of Albemarle county, rendered at May term, 1892, in an action on the case wherein the defendant in error, Pannill, was plaintiff, and the Richmond and Danville Railroad Company, the plaintiff in error here, was defendant. Opinion states the case.

*Kirkpatrick & Blackford,* for plaintiff in error.

*D. Harman, Jr.,* for defendant in error.

LACY, J., delivered the opinion of the court.

The case is as follows: The defendant in error was a brakeman on the road of the plaintiff in error company. While the train to which he was attached was standing at Covesville, a station in the county of Albemarle, on an up-grade, with the

train headed south, the accident happened which cost the defendant in error his right arm, and caused the institution of this suit.    The train was a freight train, consisting of an engine and ten cars.    One car having been uncoupled and left north of the depot, opposite a bark mill, there situated, the engine, with nine cars, was standing opposite the depot, when the conductor directed two brakemen to cut off three cars, the defendant in error (Pannill) being one of the two. A third brakeman was on the train, closer to the engine. When the conductor had so directed the two brakemen he went into the depot to get his orders.    As the train stood on up-grade, and on a curve, the slack was all taken up, and the pins were tight.    Pannill went forward on the right hand, or outside of the curve.    He carried a stick to uncouple with, but, the pin being tight and short, he says he could not uncouple with the stick.    So he went in between the cars, then standing with an engine attached, and undertook to pull the pin out with his hand.    Just then the brakeman, knowing that the grade and the curve made the pins tight and difficult (if not impossible) of extraction, gave the signal to the engineer to give the slack—that is, to back the engine enough to relieve the pressure on the pins.    Pannill having his hand just then between the bumpers, when they came together it was caught and mashed, and his arm had to be amputated. In consequence this suit was instituted by him, and at the trial a verdict was rendered for the plaintiff for $4,000, and the defendant moved the court to set aside this verdict and grant it a new trial; but the court overruled this motion, and rendered judgment in accordance with the verdict of the jury; whereupon the defendant applied for and obtained a writ of error to this court.

It is assigned as error here that the circuit court erred in refusing to set aside the verdict and grant to it a new trial. It appeared in evidence that the plaintiff, Pannill, as brake-

man, had been made to learn, and to promise to obey, and declare that he fully understood Rule No. 204: " They are charged with the management of the brakes and the proper display and use of train signals, and are positively prohibited from coupling or uncoupling cars except with a stick, and must not go between cars under any circumstances for the purpose of coupling or uncoupling, or for adjusting pins, &c., when an engine is attached to such cars or train."; and also Rule 121: " In all cases of doubt or uncertainty, take the safe course, and run no risk."

If the defendant in error had obeyed these rules, he could not possibly have been injured when and where he was injured. If he had regarded Rule 204, his hand would not have been where it could be hurt when the cars in question jammed together. If he had obeyed Rule 121, he would not have been between the cars to which an engine was attached. When he discovered, as he no doubt well knew, that he could not uncouple cars standing on an up-grade, on a curve, without getting the slack, he should have given the signal for the slack, and used his stick. If he really could not then do this, which was easily done by another after he was hurt, he should have obeyed Rule 121, " take the safe course, and run no risk "; then engine could have been detached, and the pin pulled out, without any danger, perhaps. But it is clear that if he had taken the safe course, and had not gone between the cars, he could not have been hurt when the cars came back to give the slack.

In a suit like this, the first thing to be established before there can be any recovery is the injury to the plaintiff. The injury is not denied. The next thing to be established is the negligence of the defendant. The defendant company was bound to use ordinary care—that is to say, such care as reasonable and prudent men use under like circumstances—in selecting competent servants, and in supplying and maintaining

suitable and safe appliances for the work so to be performed, and in providing generally for the safety of the servant in the course of the employment, regard being had to the work and to the difficulties and danger attending it, for what would be ordinary care in one case may be negligence in another case.

It is the duty of the master, so far as he can by the use of ordinary care, to avoid exposing his servants to extraordinary risks. One who employs servants in a complex and dangerous business *ought to prescribe rules* sufficient for its orderly and safe management. If he fails to do this, it is negligence for which he is liable to his servants. But when a servant enters upon an employment he accepts the service subject to the risks incident to it. An employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge from causes open to him, the dangerous character of which causes he had opportunity to ascertain. If a man chooses to accept employment, and continues in it, with the knowledge of the danger, he must abide the consequences of these, so far as any claim against the employer is concerned.

There appears to have been no negligence proved against the defendant company in this case. But if the act of the brakeman or engineer, in giving the slack before ascertaining whether the plaintiff was between the cars, in violation of his duty, and contrary to the rules he had promised to obey, was an act of negligence, yet it cannot be denied that the plaintiff was guilty of negligence on his part, which was the proximate cause of his injury, in going in between the cars, to which an engine was attached, to uncouple with his hand, and not with a stick; and the law will not undertake to apportion the fault. There can be no recovery for an injury caused by the mutual fault of both parties. The mere negligence of the plaintiff, however, would not disentitle him to recover, unless it were such that,

but for that negligence, the misfortune would not have happened, nor if the defendant might, by the exercise of ordinary care on his part, have avoided the consequences of the plaintiff's negligence. Over and over these principles have been announced in this court, and they are settled.

In this case it is clear that the defendant in error was the author of his own misfortune. Without his negligence, which was the proximate cause of the injury, he would not have been hurt.

It follows that the circuit court of Albemarle county erred in its action in overruling the motion of the defendant to set aside the verdict and grant to it a new trial, and the judgment aforesaid of the said court must be reversed and annulled.

JUDGMENT REVERSED.